UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Anthony S. Leach,                                    Case No. 3:22-cv-00528

        Plaintiff

    v.                                             MEMORANDUM OPINION
                                                     AND ORDER

Mike DeWine, et al.,

        Defendants

## I. Introduction

*Pro se* plaintiff Anthony S. Leach, an Ohio prisoner currently incarcerated at Marion Correctional Institution ("MCI"), filed this civil rights action against the following defendants: Governor Mike DeWine; Lyneal Wainwright; Annette Chambers-Smith, Director of the Ohio Department of Rehabilitation and Correction ("ODRC"); Warden Harold May; Mitzy Clark; Steven Harford; Kasey Plank, Kelly Riehle; Chris Lambert; Tara Rees; Latonya Cotton; Daniel Straker; Don Melton; Nicolle Wampler; James Watson; "John Does"; Theresa Smith; Lisa Connelly; Akil Ragland; Martino F. Celli; Caleb Steinmetz; Kimberly Baker-McGary; Richard A. Williams; Karen Stanforth; and Aramark Corporation. (Doc. No. 5).

Plaintiff has also filed an application to proceed *in forma pauperis* (Doc. No. 2), which I grant by separate order.

For the reasons stated below, I am dismissing Plaintiff's claims in part.

## II. Background

Plaintiff has filed a 61-page complaint against 25 defendants, asserting 40 claims. The defendants include corrections officers, medical staff, the warden, the former warden, deputy

wardens, institutional inspectors, administrators, and the Governor of Ohio. Plaintiff maintains that this action is commenced as a class action and he alleges a "mass toxic tort claim." (Doc. No. 5 at 8).

Plaintiff's complaint consists of the following allegations: (1) violation of the Prison Rape Elimination Act ("PREA"); (2) violation of the Americans with Disabilities Act ("ADA"); violation of his constitutional rights under the First, Eighth, and Fourteenth Amendments; and "intentional infliction of physical, mental, and emotional distress."

Plaintiff seeks injunctive, declaratory, and monetary relief against all Defendants.

### III. STANDARD OF REVIEW

By separate order, I have granted Plaintiff's Motion to Proceed *in Forma Pauperis* (Doc. No. 2). Accordingly, because Plaintiff is proceeding *in forma pauperis* and is seeking redress from a governmental employee, Plaintiff's Complaint is before me for initial screening under 28 U.S.C. §§ 1915(e)(2) and 1915A. Under these statutes, I am expressly required to review all *in forma pauperis* actions, and all complaints in which a prisoner seeks redress from a governmental officer or employee, and to dismiss before service any such action that I determine is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).

To survive scrutiny under these statutes, a *pro se* complaint must set forth sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *See id.* at 471 (holding that the Fed. R. Civ. P. 12(b)(6) dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) governs dismissals under § 1915(e)(2)(B) and § 1915A). The factual allegations in the pleading "must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true[.]" *Twombly*, 550 U.S. at 555 (citations omitted). The plaintiff must provide more than "an unadorned, the-Defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A court is "not bound to accept as true a legal conclusion

couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986).  A court must read a *pro se* complaint indulgently.  *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed.2d 652 (1972).  Courts are not required, however, to accept as true factual allegations that are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992)

A claim has facial plausibility when there is enough factual content present to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When a claim lacks "plausibility in th[e] complaint," that cause of action fails to state a claim upon which relief can be granted.  *Twombly*, 550 U.S. at 564.

When reviewing a complaint, I must construe the pleading in the light most favorable to the plaintiff.  *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998) (citing *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996)).  I am not required, however, to conjure unpleaded facts or construct claims against defendants on behalf of a *pro se* plaintiff.  *See Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (citation omitted); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277-78 (4th Cir. 1985).

## IV. ANALYSIS

### A. Class Action

It appears that Plaintiff is attempting to commence a class action. To the extent Plaintiff purports to represent other inmates or bring his complaint as a class action, he fails to state a claim. *Pro se* litigants, such as the unrepresented plaintiff in this case, can "present only their own claims, not the claims of other prisoners who would make up the class." *Garrison v. Mich. Dept. of Corr.*, 333 Fed. App'x. 914, 919 (6th Cir. 2009) (stating that a *pro se* litigant may not act in a representative capacity); *see also Ziegler v. Michigan*, 59 Fed. App'x. 622, 624 (6th Cir. 2003) (stating that *pro se* prisoners generally cannot adequately represent a class); *Marr v. Michigan*, No. 95-1794, 1996 U.S. App. LEXIS 14371, 1996 WL 205582, at *1 (6th Cir. April 25, 1996) ("[A]n imprisoned litigant who

is not represented by counsel may not represent a class of inmates because the prisoner cannot adequately represent the interests of the class.").

## B. The PREA

Plaintiff states that doors had been installed at the entrance to the restroom in response to the mandates of the PREA and these doors were repeatedly contaminated with fecal matter and other substances, as the inmates touched the doors to exit the restroom. He also states that the doors were not being cleaned, and the contamination on the doors therefore contributed to inmate illnesses and death. (Doc. No. 5 at 29). Plaintiff alleges that the condition of the doors (along with the lack of available soap) constitutes a violation of the PREA.

The PREA "'seeks to compile data and statistics concerning incidences of prison rape and to adopt standards to combat the same, [it] does not confer upon [inmates] any extra rights outside of the normal prison grievance system.'" *Fisher v. Fed. Bur. of Prisons*, 484 F. Supp. 3d 521, 537 (N.D. Ohio 2020) (quoting *Jones v. Medlin*, No. CV 213-040, 2012 U.S. Dist. LEXIS 150457, 2012 WL 5025309, at *6 (S.D. Ga. Sept. 10, 2012), report and recommendation adopted, No. CV 312-040, 2012 U.S. Dist. LEXIS 149490, 2012 WL 4961683 (S.D. Ga. Oct. 16, 2012)).

Numerous courts, including the Northern District of Ohio, have therefore held that the PREA does not create a private cause of action that can be brought by an individual plaintiff. *See Fisher* at 537; *Simmons v. Solozano*, No. 3:14CV-P354-H, 2014 U.S. Dist. LEXIS 129249, 2014 WL 4627278, at *4 (W.D. Ky. Sept. 16, 2014) [**26] (citing cases); *see also Peterson v. Burris*, No. 14-cv-13000, 2016 U.S. Dist. LEXIS 853, 2016 WL 67528, at *2 (E.D. Mich. Jan 6, 2016) ("Numerous [c]ourts that have addressed this issue have determined that the PREA provides no private right of action to individual prisoners.") (citing cases); *Montgomery v. Harper*, No. 5:14CV-P38-R, 2014 U.S. Dist. LEXIS 114727, 2014 WL 4104163, at *2-3 (W.D. Ky. Aug. 19, 2014).

Because the PREA does not provide Leach with a private right of action, I must dismiss those claims.

## C. The ADA

Plaintiff states that he is an "American with Disabilities" and is protected under Title II of the ADA. He alleges that Defendant Akil Ragland took the electrical cords from Plaintiff's CPAP machine so that he could not use the machine while he slept, which Plaintiff claims is a violation of the ADA. Within this claim, Plaintiff alleges that Ragland's conduct also constituted a violation of his Eighth Amendment rights.

To allege disability discrimination under Title II of the ADA, Plaintiff must allege that: (1) he has a disability; (2) he is otherwise qualified for the benefit in question; and (3) he was excluded from the benefit due to discrimination because of his disability. *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015).

Here, Plaintiff has not alleged that he was discriminated against or otherwise denied adequate medical care (the use of his CPAP) based on his disability. Moreover, a prisoner does not state a claim for relief under the ADA for the denial of medical treatment where the claim "was merely an Eighth Amendment deliberate indifference claim in another statutory guise." *Chapman v. Franklin Cty. Sheriff*, No. 2:22-cv-2524, 2022 U.S. Dist. LEXIS 131179, at *20 (S.D. Ohio July 22, 2022); *see also Watson v. Mohr*, 2:17-cv-457, 2017 WL 6383812, at *5 (S.D. Ohio Dec. 14, 2017) ("[n]either medical treatment decisions nor medical malpractice . . . may form the basis of a claim under the ADA"), *report and recommendation adopted*, 2018 WL 836484 (S.D. Ohio Feb. 13, 2018); *Simmons v. Navajo Cty.*, 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability."), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners …. The ADA does not create a remedy for medical malpractice.").

Because Plaintiff has failed to allege that he was deprived of the use of his CPAP machine because of his purported disability, and because Plaintiff's claim is essentially an Eighth Amendment

deliberate indifference claim, Plaintiff's complaint fails to state a claim upon which relief may be granted under the ADA.

### D. 42 U.S.C. § 1983

To state a claim under § 1983, Plaintiff must allege that a person acting under state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *See West v. Atkins*, 487 U.S. 42 (1988).  Plaintiff must also allege that "the defendants were personally involved in the alleged deprivation of federal rights."  *Frazier v. Michigan*, 41 F.App'x 762, 764 (6th Cir. 2002) (citing *Hall v. United States*, 704 F.2d 246, 251 (6th Cir. 1983)).  "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

### 1. Official Capacity Claims

The Supreme Court has held that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," which is "no different from a suit against the State." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). *See also Grinter*, 532 F.3d at 572. As the defendants are employed by the ODRC, or the State of Ohio, and thus state employees, Plaintiff's official capacity claims against these defendants are construed as claims against the State of Ohio. *See Peace v. Mohr*, N.D. Ohio No. 4:12CV2283, 2013 U.S. Dist. LEXIS 190092, at *12 (Apr. 29, 2013). Likewise, as Defendant DeWine is Governor of the State of Ohio, and thus a state officer, Plaintiff's official capacity claims against Governor DeWine are also construed as claims against the State of Ohio. *See Smith v. Dewine*, 476 F. Supp. 3d 635, 651 (S.D. Ohio 2020).

The Eleventh Amendment bars suits brought in federal court against a State and its agencies unless the State has waived its sovereign immunity or consented to be sued in federal court. *See Will*, 491 U.S. at 71; *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985).  The

State of Ohio has not waived its sovereign immunity in federal court. *See Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999). Furthermore, it is well established that the federal statute invoked in this case, 42 U.S.C. § 1983, does not abrogate the Eleventh Amendment. *See Will*, 491 U.S. at 66-67; *Quern v. Jordan*, 440 U.S. 332, 340-41, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979). Thus, Plaintiff's official capacity claims against Defendants are unavailing.  Moreover, the Supreme Court has held that neither a State nor its officials acting in their official capacities are "persons" under § 1983. *See Will*, 491 U.S. at 71.

Plaintiff's official capacity claims against Defendants therefore fail to state a claim upon which relief may be granted.

## 2. Individual Capacity Claims

Concerning any claim against Defendants in their individual capacities, a plaintiff cannot establish the liability of any defendant under § 1983 absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976). *See also Heyerman v. Cnty. of Calhoun*, 680 F.3d. 642, 647 (6th Cir. 2012) (noting that "[p]ersons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior"); *Murphy v. Grenier*, 406 Fed. App'x. 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability"). Individual liability must therefore "be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants." *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991). A defendant must therefore play more than a passive role in the alleged violation or show mere tacit approval of the actions in question. *Rizzo*, 423 U.S. at 371.

### a. Eighth Amendment

Plaintiff alleges Defendants' actions constituted (1) deliberate indifference to his conditions of confinement; (2) deliberate indifference to medical needs; and (3) the use of excessive force, in

violation of the Eighth and Fourteenth Amendments. These claims, however, arise under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); *Hudson v. McMillian*, 503 U.S. 1, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *see also Dotson v. Sloan*, No. 1:14 CV 2491, 2015 U.S. Dist. LEXIS 39307, at *4 (N.D. Ohio Mar. 27, 2015). I will therefore construe these claims as arising under the Eighth Amendment.

The Eighth Amendment protects all people from "cruel and unusual punishments." U.S. Const. amend. VIII. "'[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer*, 511 U.S. at 832 (quoting *Helling v. McKinney*, 509 U.S. 25, 31, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993)). The Eighth Amendment therefore imposes a constitutional limitation on the power of the states to punish those convicted of crimes.

Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). The Eighth Amendment protects inmates by requiring that "prison officials . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and . . . 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 833 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)). This constitutional protection, however, does not mandate that a prisoner be free from discomfort or inconvenience during his or her incarceration. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).

Prisoners are not entitled to unfettered access to the medical treatment of their choice, *see Hudson*, 503 U.S. at 9, nor can they "expect the amenities, conveniences and services of a good hotel," *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988); *Thaddeus-X v. Blatter*, 175 F.3d 378, 405 (6th Cir. 1999). In sum, the Eighth Amendment affords the constitutional minimum protection against conditions of confinement that constitute health threats but does not address those

conditions which cause the prisoner to feel merely uncomfortable or which cause aggravation or annoyance. *Hudson*, 503 U.S. at 9-10 (requiring extreme or grave deprivation).

The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991), provided a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. *Id.* Seriousness is measured in response to "contemporary standards of decency." *Hudson*, 503 U.S. at 8. Routine discomforts of prison life do not suffice. *Id.* Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9.

A plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id.* Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986). Liability cannot be predicated solely on negligence. *Id.* The subjective component of a claim requires a prisoner to show that a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. An official may not be held liable if he responded reasonably to a known risk, even if the harm ultimately was not averted. *Id.* at 844.

A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer*, 511 U.S. at 834.

In an excessive force inquiry, the central question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. And the inmate must show that the excessive force used against him resulted in "sufficiently serious" harm. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir.2011) (citing *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). The Eighth Amendment's prohibition

of cruel and unusual punishments "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9-10 (citing *Whitley v. Albers*, 475 U.S. 312, 327, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)) (further citation and internal quotation marks omitted).

<u>Doors, Soap, Ventilation, Overcrowding, and Unsafe Dining Practices</u>

Plaintiff claims there are dirty doors, inadequate soap, no antibacterial soap, inadequate ventilation, and overcrowded cells. (Doc. No. 5 at 29-32). He alleges that Defendants Steven Harford, Kasey Plank, Tara Rees, Daniel Straker, Don Melton, Nicolle Wampler, James Watson, and Lyneal Wainwright refused to order the "elimination or replacement of the doors." (*Id.* at 29). He also claims that these same defendants, plus John Does, refused to provide "an adequate amount of soap" and "any antibacterial soap." (*Id.* at 30). Plaintiff generically claims that Aramark refused to implement safe practices in the "chow hall." (*Id.* at 42).

Plaintiff's claims pertaining to dirty doors, inadequate soap, no antibacterial soap, inadequate ventilation, and overcrowded cells do not rise to the level of an Eighth Amendment violation. He complains that because the inmates repeatedly touch the doors in the dorms, they spread disease. And the lack of soap contributes to the spread of disease. Plaintiff does not allege that there is no soap but rather that there is an insufficient amount of soap or not the kind of soap he prefers, i.e. antibacterial soap. Additionally, the soap is merely unavailable at times from one source. Soap may be purchased by inmates in the commissary.

On the face of the pleading, these complaints all appear to be mere discomforts and inconveniences. They do not appear to present serious threats to his health and safety. Moreover, even if any of the allegations did suggest an objectively serious deprivation, Plaintiff has not pled facts to suggest any named defendant was personally aware of the situation and failed to act. According to Plaintiff's complaint, prison officials fill the soap dispensers three times per week. The

fact that they do not refill them as often as Plaintiff suggests or fill them with the type of soap Plaintiff prefers, does not demonstrate deliberate indifference.

Regarding Plaintiff's claim of inadequate ventilation, Plaintiff's repeated allegations of Defendants' refusal to provide "adequate ventilation" is vague, general, and conclusory, and it lacks any factual support. One cannot plausibly infer from these conclusory assertions set forth in Plaintiff's complaint that the defendants were aware of, and consciously disregarded, a serious risk to his health and safety resulting from the purported inadequate ventilation.

Plaintiff's claim that he was subjected to overcrowded conditions at MCI also fails. Plaintiff's allegation that Defendants Wainwright, Harold May, John Does, and Annette Chambers-Smith "maintain[ed] an overpopulation of inmates in Ohio prisons" is vague and conclusory and fails to demonstrate the defendants were aware of, and consciously disregarded, a serious risk to his health and safety resulting from the overcrowded conditions. Moreover, while overcrowded conditions can be restrictive and even harsh, they do not violate the Eighth Amendment unless they deprive the inmate of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347. Although Plaintiff may have been subjected to a crowded prison, this complaint, without more, appears to be a result of the mere discomfort of prison.

Plaintiff's claim that Aramark "refused [to] implement safe practices with regard to preventing inmates from touching the sporks, cups, and drinking Cambro levers" is also vague and conclusory and fails to demonstrate that the defendant was aware of, and consciously disregarded, a serious risk to his health and safety resulting from the purported contamination in the chow hall.

The foregoing claims fail to state a plausible claim for relief and are dismissed.

<u>Hunger Strike</u>

Plaintiff states that he went on a hunger strike for two weeks to "emphasize the importance of his complaints" and Defendants Plank, Rees, Straker, Melton, Wampler, and Watson "forced Plaintiff to starve [rather than] correct[] the constitutional violations occurring at [MCI]." (*Id.* at 12-

13, 32). In the context of this claim, Plaintiff does not allege that that the defendants denied him medical treatment or failed to monitor his health during his hunger strike. Rather, he claims that Defendants violated his constitutional rights when they refused to give in to his demands. Defendant's refusal to give in to Plaintiff's demands does not constitute deliberate indifference to his health and safety. To the extent, therefore, that Plaintiff claims Defendants' actions during his hunger strike constituted deliberate indifference, he fails to state a plausible claim.

Quarantine

Plaintiff claims that after he became sick with Covid-19, Defendant Theresa Smith refused to quarantine Plaintiff, and he therefore became a "plague carrier." (Doc. No. 5 at 16, 33). The failure to quarantine Plaintiff *after* he had contracted the virus does not demonstrate an objective deliberate indifference to Plaintiff's health and safety. This claim could rather be construed as deliberate indifference to other inmates' health. But Plaintiff cannot maintain a civil rights action on behalf of other inmates. See *Garrison*, 333 Fed. App'x. at 919.

According to Plaintiff, he was ultimately placed in quarantine. He alleges that his quarantine cell was dirty (Doc. No. 18). In support, he claims that despite being ill, he spent many hours cleaning his cell, removing soiled bedding, and spraying disinfectant, "with no help whatsoever." *(Id.)*. This allegation does not satisfy the objective criteria for an Eighth Amendment claim. The condition of which Plaintiff complains does not rise to the level of extreme or grave deprivation necessary to establish a deliberate indifference claim. *Hudson*, 503 U.S. at 9-10. Nor does it demonstrate defendants' "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. *See Knop v. Johnson*, 977 F.2d 996, 1012-17 (6th Cir.1992).

Plaintiff also alleges that Smith, Rees, Lisa Connelly, and Ragland refused to permit Plaintiff access to medication while in quarantine. (Doc. No. 5 at 16-18, 33-34). In support, he states that the defendants refused to retrieve his "bag of remedies," which consisted of items that Plaintiff had previously purchased, such as Tylenol, cough drops, and vitamins. The failure of the defendants to

provide Plaintiff with his bag of remedies does not rise to the level of a constitutional violation. Rather, it is a mere discomfort or annoyance. And Plaintiff fails to demonstrate the defendants were denying him medical care while in quarantine. In fact, Plaintiff indicates that on more than one occasion, the nursing staff visited him and took his vitals. (*Id.* at 16-17). The fact that they did not do more to manage Plaintiff's symptoms does not demonstrate deliberate indifference. *See Apanovitch v. Wilkinson*, 32 Fed. App'x. 704, 707 (6th Cir. 2002) (citations omitted) ("a difference of opinion between [an inmate] and the prison health care providers and a dispute over the adequacy of [the inmate's] treatment . . . does not amount to an Eighth Amendment claim."). To prevail on an Eighth Amendment claim, Plaintiff must establish that the care he is receiving is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Terrance v. Northville Regional Psychiatric Hosp.*, 286 F.3d 834, 844 (6th Cir. 2002).

Plaintiff's deliberate indifference claim concerning quarantine must fail as a matter of law.

<u>Suicide Watch</u>

Plaintiff claims that the conditions of his cell while on suicide watch violated his Eighth Amendment rights. In support, he argues that Ragland forced him to remain naked in a dirty cell with no heat and a window that would not close, thus exposing him to freezing temperatures. (Doc. No. 5 at 38). According to Plaintiff, he was sick and fevered and "nearly froze to death," from the evening of April 8 through the morning of April 9. And during his morning shower, he became too dizzy and weak to stand and he required medical attention. (*Id.* at 21-22).

He also alleges that Ragland removed one of Plaintiff's CPAP cords and consequently refused to allow Plaintiff to sleep with his machine. (*Id.* at 36). Plaintiff states that when he advised Ragland that he needed the cord to plug in the CPAP, Ragland replied that he did not care. And when Plaintiff informed Ragland that he had no authority to take a medical device from him and that only medical personnel had that authority, Ragland replied, "Watch me." Plaintiff later

requested the corrections officer on watch to retrieve his cord, and the officer advised Plaintiff that "Ragland was not going to give the cord back." (*Id.* at 19-20).

Upon review, I find Plaintiff has stated a plausible claim of deliberate indifference concerning Ragland's actions during suicide watch.

Plaintiff also alleges that Nurse Kimberly Baker-McGary failed to provide timely medical treatment while Plaintiff was under suicide watch. (Doc. No. 5 at 22-24, 39-40). According to plaintiff, Baker-McGary initially refused to examine him because he was "nude and exposed." (*Id.* at 22). When she ultimately examined him, Plaintiff was cold, weak, dizzy, unable to stand, and he had "bluish" skin. Plaintiff argues that she should have called an ambulance. (*Id.* at 23, 39).

In evaluating a deliberate indifference claim concerning medical care or treatment, courts distinguish between cases in which the complaint alleges a complete denial of medical care and those cases when a prisoner claims he received inadequate medical treatment. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir.1976); *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). When a prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments." *Westlake*, 537 F.2d at 860 n.5. It is possible, however, for medical treatment to be "so woefully inadequate as to amount to no treatment at all." *Id.*

Assuming that Plaintiff has demonstrated a "sufficiently serious medical need," i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004) (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990) (emphasis added)), he has satisfied the objective component of deliberate indifference. Plaintiff, however, has failed to allege facts suggesting Baker-McGary recklessly disregarded a substantial risk to his health.

"Ordinary medical malpractice does not satisfy the subjective component" of a medical deliberate indifference claim. *Grose v. Corr. Med. Servs, Inc.*, 400 Fed. App'x. 986, 988 (6th Cir. 2010).

14

And a "a difference of opinion between [an inmate] and the prison health care providers and a dispute over the adequacy of [the inmate's] treatment . . . does not amount to an Eighth Amendment claim." Apanovitch, 32 Fed. App'x. at 707.

Here, the complaint suggests that Plaintiff received some treatment for his condition. According to Plaintiff, Baker-McGary used a pulse oximeter on his finger to check his oxygen level and heart rate at least three times. After the device registered a heart rate of 24-beats-per-minute, Baker-McGary requested the corrections officers carry Plaintiff to an examination table in segregation, where Baker-McGary used an EKG to examine the condition of Plaintiff's heart. Baker-McGary determined the EKG showed nothing wrong with Plaintiff's heart and she left him in segregation. (Id. at 22-24). These facts suggest nothing more than a difference of opinion between Plaintiff and his medical provider regarding the type of care he received.

Plaintiff has therefore failed to state a plausible deliberate indifference claim concerning his medical treatment while on suicide watch.

<u>Excessive Force</u>

Concerning his excessive force claim, Plaintiff states that he was too weak and ill to stand up and he begged for help. He alleges that Lieutenant Richard A. Williams angrily stated that he "was tired of all this shit" and ordered corrections officers Martino F. Celli and Caleb Steinmetz to physically remove Plaintiff from the floor, authorizing Celli and Steinmetz "to use direct force to get [Plaintiff] back to his cell." (Doc. No. 5 at 26).

According to Plaintiff, at Williams's command, Celli and Steinmetz rolled Plaintiff on his stomach, lifted Plaintiff's hands behind his back, and secured Plaintiff's hands in handcuffs. Plaintiff states that Celli and Steinmetz used a force technique designed to force compliance from recalcitrant inmates by locking Plaintiff's arms in an "arm bar," causing severe pain, and they carried him through the halls. (Id.). Plaintiff states that he was weakened by the Covid-19 virus and unable to comply with the defendants' orders, and therefore, he "was forced to take the full brunt of the

torture for several minutes as Celli and Steinmetz struggled through the narrow … passages of the segregation block." (*Id.* at 27). Plaintiff alleges that Celli and Steinmetz inflicted more pain on him for a longer period of time by taking a route that was 3 times the length of the direct path to his cell. According to Plaintiff, although he informed the defendants that they were hurting him, Steinmetz replied that he did not care, and when they arrived at his cell, the defendants "bounced" him in an effort to "do more damage to his shoulders." Plaintiff alleges that he experienced "blinding pain from the torture," and after the defendants "dumped" Plaintiff on his bed, he passed out. (*Id.*). Plaintiff indicates that he still suffers from the injuries he sustained during the incident.

Finally, Plaintiff alleges that the defendants refused to provide Plaintiff with medical attention after the use of force. (*Id.* at 27-28, 41). Plaintiff states that Celli and Steinmetz went to the medical department to receive their own treatment for any injuries following the incident and they reported no injuries from their interaction with the plaintiff. Celli and Steinmetz, however, did not present Plaintiff for medical examination, as required by law. (*Id.*).

Taking the facts stated in the complaint as true, the Court finds Plaintiff has pleaded sufficient facts to plausibly state that Williams, Celli, and Steinmetz willfully and wantonly used excessive force against him resulting in substantial injuries. Plaintiff also has plead sufficient facts to plausibly suggest that these defendants failed to provide medical care following the use of force. Plaintiff has therefore alleged a plausible claim of excessive force and deprivation of medical care against Williams, Celli, and Steinmetz to survive initial screening.

### b. First Amendment

Plaintiff claims that the following actions constitute a violation of the First Amendment: (1) Defendants Plank and Lambert's failure to permit Plaintiff to contact the ODRC regarding the condition of the prison (Doc. No. 5 at 35); (2) Defendants Rees, Connelly, and Ragland's failure to permit Plaintiff to communicate with his family during the COVID-19 outbreak (*Id.* at 36); (3) Defendants Plank and Lambert's failure to permit Plaintiff to file an untimely grievance (*Id.* at 35);

(4) Defendants Plank and/or Lambert's failure to permit Plaintiff to exhaust his administrative remedies for his grievances concerning Ragland's refusal to remove Plaintiff from a "fecal coated cell," Ragland's actions in forcing Plaintiff to remain in a dirty and cold cell under suicide watch, and Williams, Celli, and Steinmetz's alleged use of excessive force. (*Id.* at 38-40); and (5) Defendant Plank's filing of a "fictitious" grievance "on Plaintiff's behalf, yet against his will." (*Id.* at 40).

Plaintiff also includes in his request for relief a statement that Defendants' actions and inactions were motivated in part by their desire to retaliate against Plaintiff for his filing of "hundreds of informal complaints, grievances, and appeals against them and their coworkers" for 20 years. (Doc. No. 5 at 42).

Under the First Amendment, prison inmates have a right of access to the courts and a right to freedom of expression, which includes the right to send and receive mail. This right must be balanced against the authority of prison officials to reasonably regulate and inspect a prisoner's mail for security purposes and to seize contraband. *Thornburgh v. Abbott*, 490 U.S. 401, 407, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989); *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987); *Wolff v. McDonnell*, 418 U.S. 539, 575-77, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974); *Procunier v Martinez*, 416 U.S. 396, 412-13, 94 S. Ct. 1800, 40 L. Ed. 2d 224 (1974); *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005).

<u>Communication</u>

Federal courts "accord substantial deference to prison administrators to regulate prisoner mail where necessary to preserve important penological interests." *King v. Gerth*, No. 2:07-cv-84, 2008 U.S. Dist. LEXIS 87531, at *7 (W.D. Mich. Oct. 29, 2008) (citing *Thornburgh*, 490 U.S. at 407-08; *Procunier*, 416 U.S. at 404-05; *Harbin-Bey*, 420 F.3d at 578). This First Amendment right of prisoners to send and receive mail "must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." *Thornburgh*, 490 U.S. at 407 (quoting *Turner*, 482 U.S. at 85). To the extent not inconsistent with their status as prisoners or with legitimate

penological objectives, prisoners retain their "First Amendment rights to communicate with family and friends." *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994).

Plaintiff states that upon learning of Covid-19, he began making suggestions to the MCI staff regarding how to "ameliorate the threat" of Covid-19. Without the staff's permission, Plaintiff implemented his own suggestions, including moving tables in the chow hall to prevent the inmates from touching the beverage dispensers or cups and wearing gloves to pass out beverages to other inmates. (Doc. No. 5 at 14). Plaintiff then states that Plank read an email to him, stating that Plaintiff "was not permitted to send any correspondence to any employee at ODRC's [Operation Support Center]." *(Id.)*.

Plaintiff also states that he reported the "unsafe and unsanitary practices" in the chow hall to Wainwright, and Wainwright advised Plaintiff that she had read his emails. According to Plaintiff, she failed to do anything to rectify the problem. (*Id.* at 15). Finally, Plaintiff asserts that from April 4 through April 16, Defendants refused to permit him access to his tablet, a "landline" phone, or pen/paper for communication with his family while he was sick with Covid-19. (*Id.* at 17).

Here, Plaintiff has cited to two occasions in which his ability to send mail had purportedly been thwarted. Limited instances of such occurrences typically do not rise to the level of constitutional violations. "Random and isolated interference" with a prisoner's mail does not violate his constitutional rights. *Johnson v. Wilkinson*, 2000 U.S. App. LEXIS 21036, 2000 WL 1175519, at * 2 (6th Cir. Aug. 11,2000); *Glover v. Boardman*, No. 1:18 CV 1134, 2018 U.S. Dist. LEXIS 215290, at *21 (N.D. Ohio Dec. 21, 2018). Plaintiff's conclusory allegations against Defendants regarding his inability to send mail on two occasions are therefore insufficient to state a § 1983 claim upon which relief can be granted.

<u>Grievance Procedure</u>

Inmates have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996). A claim for interference with the grievance process

arises under the First Amendment, either for denial of access to the courts or for retaliation. *Houston v. Mohr*, No. 3:18 CV 305, 2018 U.S. Dist. LEXIS 235369, at *11 (N.D. Ohio July 27, 2018) (stating there is no due process claim for interference with the grievance process; rather, such claim arises under the First Amendment). To state a claim for denial of access to the courts, an inmate must establish that he suffered an actual injury. *Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999).

Here, Plaintiff alleges Defendants denied him access to the courts by thwarting his attempts to either file a grievance or exhaust his administrative remedies through the prison grievance process. Plaintiff, however, was able to file this complaint. And the Court has not dismissed the complaint on the grounds of failure to exhaust. Plaintiff was therefore never denied access to the courts, and he cannot show any actual injury to sustain his First Amendment claim.

Concerning Plaintiff's claim that Plank filed a fictitious grievance on his behalf, Plaintiff fails to identify what constitutional right Plank is alleged to have violated by filing a "fictitious" grievance and the Court is unable to discern one from the complaint.

<u>Retaliation</u>

To the extent Plaintiff is attempting to allege a claim of retaliation, that claim fails. Retaliation, though it is not expressly referred to in the Constitution, is actionable because retaliatory actions may tend to chill an individual's exercise of First Amendment rights. *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972). To state a prima facie case for retaliation prohibited by the First Amendment, Plaintiff must establish: 1) he engaged in protected conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that a causal connection exists between the first two elements. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Plaintiff's conclusory allegation, included in his request for relief, that Defendants' actions and inactions were motivated by their desire to retaliate against Plaintiff for his filing of hundreds of informal complaints and grievances, without any further factual enhancement, is simply insufficient

to state an actionable claim for relief. *See Twombly*, 550 U.S. at 555-57. Therefore, to the extent Plaintiff claims retaliation, that claim is dismissed.

### 3. Supervisor Liability

Much of Plaintiff's complaint is directed at the "policy and practice" of supervisory prison staff members or officials. Plaintiff alleges throughout his complaint that these defendants are liable because they have either refused to take corrective action or they have failed to properly train or instruct their staff members. To the extent Plaintiff is attempting to assert a supervisory liability claim, the supervisors cannot be liable for a § 1983 claim "premised solely on a theory of respondeat superior, or the right to control employees." *Heyerman*, 680 F.3d at 647. The Sixth Circuit has held that to be liable under § 1983, a supervisor must at least implicitly authorize, approve, or knowingly acquiesce in the unconstitutional conduct of the offending officers. *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982). A failure to supervise, control, or train an individual is not actionable "unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999) (quoting *Hays*, 668 F.3d at 874).

Plaintiff alleges the following against individual prison officials in their supervisory capacity: (1) Plank and Kelly Riehle's failure to take corrective action against Defendants for refusing to order replacement bathroom doors (Doc. No. 5 at 29); (2) Plank and Riehle's failure to take corrective action against Defendants for refusing to purchase soap (*Id.* at 30-31); (3) Plank and Riehle's failure to take corrective action against Defendants for refusing to provide adequate ventilation (*Id.* at 32); (4) Plank, Riehle, and Lambert's failure to take corrective action against Defendants for refusing to quarantine Plaintiff (*Id.* at 33); (5) Plank, Riehle, and Lambert's failure to take corrective action against Defendants for refusing to permit Plaintiff his "bag of remedies" (*Id.* at 34); (6) Plank and Riehle's failure to take corrective action against Defendants for refusing to provide Plaintiff medication from the infirmary to treat Covid-19 symptoms (*Id.* at 34-35); (7) Latonya Cotton, Plank,

and Riehle's failure to take corrective action against Defendants for refusing to permit Plaintiff the use of his tablet, phone, and pen/paper while sick (*Id.* at 36); (8) DeWine, Chambers-Smith, and Wainwright's failure to properly train and instruct Defendant Ragland "not to torture persons protected by [the ADA]" (*Id.* at 37); (9) Straker, Plank,, and Riehle's failure to take corrective action against Defendant Ragland for taking Plaintiff's CPAP cords (*Id.*); (10) DeWine, Chambers-Smith, and Wainwright's failure to properly train and instruct Defendants "not to endorse the torture of persons protected by [the ADA] (*Id.*); (11) Rees, Plank, and Karen Stanforth's failure to "hold [Baker-McGary] accountable for failing to provide timely medical care." (*Id.* at 39); (12) Plank and Stanforth's failure to "hold [Celli, Steinmetz, and Williams] accountable for using force against Plaintiff" (*Id.* at 40-41); (13) Plank and Stanforth's failure to take corrective action against Defendants for refusing to record the use of force (*Id.*); and (14) Plank and Stanforth's failure to take corrective action against Celli, Steinmetz, and Williams for refusing to ascertain medical care after the use of force (*Id.*).

Plaintiff's foregoing claims are based solely on Defendants' responses to Plaintiff's grievances or the defendants' failure to remedy alleged unconstitutional behavior. The failure to intervene on a prisoner's behalf does not rise to the level of a constitutional violation. *See Shehee*, 199 F.3d at 300. And Plaintiff fails to make any factual allegations that would support even an inference that these defendants directed or participated in the alleged misconduct. His conclusory allegations that "no policies [have] been changed," "negligent supervision/training," the failure to "hold accountable," and "failing to take corrective action," without any factual allegation in support that asupervisor or supervisors encouraged the specific misconduct or participated in it, is insufficient to establish liability under § 1983.

Accordingly, Plaintiff's supervisory liability claims against DeWine, Chambers-Smith, Wainwright, Plank, Riehle, Lambert, Cotton, Straker, Rees, and Stanforth are dismissed for failure to state a plausible claim.

### E. Intentional Infliction of Emotional Distress

Plaintiff alleges throughout the complaint that Defendants' actions constituted the intentional infliction of "physical, mental, and emotional distress" in violation of state and federal laws. The claim is properly stated as a claim of intentional infliction of emotional distress.

A claim of intentional infliction of emotional distress does not amount to a constitutional violation. *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 678 (6th Cir. 2005); *Giannini v. Erie Cty.*, No. 3:15CV01379, 2016 U.S. Dist. LEXIS 19764, at *12 (N.D. Ohio Feb. 18, 2016). Although a plaintiff can recover damages for emotional and mental anguish "caused by a due process or other constitutional violation brought pursuant to § 1983," the claim by itself does not constitute a cognizable constitutional claim remediable pursuant to 42 U.S.C. § 1983. *Id.*  I will therefore evaluate Plaintiff's claim under Ohio law.

Under Ohio law, a plaintiff claiming intentional infliction of emotional distress must show that "'(1) the defendant intended to cause emotional distress or knew or should have known that his conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it.'" *Reo v. Lindstedt*, No. 1:19cv2786, 2020 U.S. Dist. LEXIS 252424, at *14 (N.D. Ohio Dec. 1, 2020) (citing *Ekunsumi v. Cincinnati Restoration, Inc.*, 120 Ohio App. 3d 557, 698 N.E.2d 503, 506 (Ohio Ct. App 1997) and *Yeager v. Local Union 20*, 6 Ohio St. 3d 369, 6 Ohio B. 421, 453 N.E.2d 666 (Ohio 1983)).

Liability for intentional infliction of emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Yeager*, 6 Ohio St. 3d at 375. And the emotional distress must be serious, such that it constitutes "'emotional injury which is both severe and debilitating[,]'" and goes beyond "'mere upset or hurt feelings.'" *Reeves v. Fox Television*

*Network*, 983 F. Supp. 703, 711 (N.D. Ohio 1997) (quoting *Paugh v. Hanks*, 6 Ohio St. 3d 72, 6 Ohio B. 114, 451 N.E.2d 759, 765 (Ohio 1983)).

Here, with the exception of Plaintiff's claims against Ragland (conditions under suicide watch) and Williams, Celli, and Steinmetz (excessive force), I find Plaintiff has failed to allege facts describing behavior that is so outrageous and extreme and beyond all possible bounds of decency to support a claim for intentional infliction of emotional distress. Moreover, Plaintiff has failed to allege he has sustained an emotional injury that is both severe and debilitating. His conclusory allegations that Defendants' actions "form the basis of … the intentional infliction of … emotional distress" and have caused Plaintiff to "needlessly suffer" are insufficient to state a claim.

Accordingly, I must dismiss Plaintiff's claims against all of the defendants for intentional infliction of emotional distress, with the exception of his claims against Ragland, Williams, Celli, and Steinmetz.

## V. CONCLUSION

For the foregoing reasons, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, I am dismissing the following of Plaintiff's claims: PREA claims; ADA claims; official capacity claims under 42 U.S.C. § 1983; supervisory liability claims; First Amendment claims; Intentional Infliction of Emotional Distress claims against all Defendants except Ragland, Williams, Celli, and Steinmetz; and any Eighth Amendment claims against Harford, Plank, Rees, Straker, Melton, Wampler, Watson, Wainwright, Clark, John Does, Chambers-Smith, Warden May, Smith, Connelly, Baker-McGary, and Aramark.

This case shall proceed solely on the following claims: (1) Plaintiff's Eighth Amendment claim of deliberate indifference against Defendant Ragland for Plaintiff's conditions of confinement while on suicide watch; (2) Plaintiff's Eighth Amendment claims of excessive force and denial of medical treatment following the use of force against Defendants Williams, Celli, and Steinmetz; and

(3) Plaintiff's claims of intentional infliction of emotional distress against Ragland, Williams, Celli, and Steinmetz.

      So Ordered.

s/ Jeffrey J. Helmick          
United States District Judge
