UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Anthony S. Leach,                                Case No. 3:22-cv-528

            Plaintiff,

       v.                                             MEMORANDUM OPINION
                                                          AND ORDER

Mike DeWine, et al.,

            Defendants.

## I.     INTRODUCTION

Before me are the following motions and "requests" filed by *pro se* Plaintiff Anthony S. Leach: (1) motion for appointment of counsel, (Doc. No. 3); (2) motion to have the Clerk of Court seek from the Ohio Department of Rehabilitation and Correction a "Control Number", (Doc. No. 7); (3) "request for intervention", (Doc. No. 17); (4) request for an extension of time to determine a response to my March 21, 2023 Memorandum Opinion and Order, (Doc. No. 19); and (5) "request[s] for order of service" on Defendants Richard A. Williams and Akil Ragland, (Doc. Nos. 23 & 27). I will address each of these motions, in turn.

## II.     DISCUSSION

**A. Motion for Appointment of Counsel**

Although federal courts have statutory authority under 28 U.S.C. § 1915(e) to request that an attorney represent a person unable to afford counsel in a civil case, appointment of counsel is not a constitutional right. *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993) (citation omitted). Rather, "[i]t is a privilege that is justified only by exceptional circumstances." *Id.* at 606. I do not

find that exceptional circumstances exist in this case at this time. Therefore, I deny Plaintiff's motion without prejudice.

**B. Motion to have the Clerk of Court seek a "Control Number"**

The Ohio Administrative Code provides separate procedures for the inspection of an inmate's incoming "regular mail" and "legal mail." O.A.C. § 5120-9-17(B). While "regular mail" may be opened outside of the presence of the inmate, "legal mail" "may be opened and inspected for contraband *only in the presence of the inmate-addressee*." O.A.C. § 5120-9-17(B)(2) (emphasis added). The Code defines "legal mail" as "mail addressed to an inmate clearly bearing the return address of an attorney-at-law, a public service law office, a law school legal clinic, court of law, or the correctional institution inspection committee *that is marked with a valid control number provided by the department*. . . . If mail is received from any of the groups listed without a valid control number, then it may be treated as a regular, non-legal mail[.]" O.A.C. § 5120-9-17(B)(2) (emphasis added). In other words, if mail from a court is not marked with a valid control number, it is considered "regular mail" and need not be opened in the presence of the inmate.

Plaintiff has now filed a motion requesting I order the Clerk of Court to seek a "control number" for all documents sent to him by this court in this case so that they may be considered "legal mail" and opened in his presence. (Doc. No. 7). The Sixth Circuit has held that, "mail from a court constitutes 'legal mail' and cannot be opened outside the presence of a prisoner who has specifically requested otherwise." *Sallier v. Brooks*, 343 F.3d 868, 877 (6th Cir. 2003). Therefore, because Plaintiff has specifically requested his incoming mail from this court be opened in his presence, and because this is assured only for mail from this court "that is marked with a valid control number provided by the department," I grant Plaintiff's motion and order the Clerk to mark every mailing to him from this court in this case with a valid control number.

### C. Request for an Extension of time to Respond

Plaintiff moves for an extension of time to file a motion for reconsideration of my March 21, 2023 Memorandum Opinion and Order. (Doc. No. 23). But Plaintiff's lengthy motion for an extension of time is in itself a motion for reconsideration, citing facts and law. Therefore, I will treat it as such.

In my March 21, 2023 Memorandum Opinion and Order, I dismissed many but not all of Plaintiff's claims. (Doc. No. 12). Therefore, I may reconsider my decision under Rule 54(b), which provides that any order or decision, other than a "final judgment" entered as described in the text of the Rule, "that adjudicates fewer than all the claims . . . of fewer than all the parties does not end the action as to any of the claims or parties . . . may be revisited at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

"The major grounds justifying reconsideration of interlocutory orders are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998) (*citing Petition of U.S. Steel Corp.*, 479 F.2d 489 (6th Cir. 1973), *cert. denied, Fuhrman v. U.S. Steel Corp.*, 414 U.S. 859 (1973)); *see also Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) (*citing Marconi Wireless Tel. Co. of Am. v. United States*, 320 U.S. 1, 47-48 (1943) ("District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment.")).

Here, Plaintiff does not allege there has been an intervening change of controlling law or that new evidence has become available. Instead, Plaintiff suggests I have erred in dismissing his claims. But after reviewing his motion and the attachments to that motion, I do not find that the dismissal on any of these claims was a "clear error." Further, while I understand given the unfavorable outcome that Plaintiff may believe a "manifest injustice" occurred here, I did not act

with any bias against Plaintiff or ulterior motive in dismissing those claims. I merely applied the law, as I must.

Because Plaintiff did not state an arguable basis for reconsideration of my decision as to any of the claims dismissed, I deny Plaintiff's request for additional time "to flesh out his issues" with my decision. I also deny his request to recuse myself from further proceedings in this case as I find no grounds to do so at this time. Instead, I order this case proceed before me as to remaining claims: (1) Plaintiff's Eighth Amendment claim of deliberate indifference against Defendant Akil Ragland for Plaintiff's conditions of confinement while on suicide watch; (2) Plaintiff's Eighth Amendment claims of excessive force and denial of medical treatment following the use of force by Defendants Richard A. Williams, Martino F. Celli, and Caleb Steinmetz; and (3) Plaintiff's claims of intentional infliction of emotional distress against Ragland, Williams, Celli, and Steinmetz.

**D. Requests for Service**

Because Plaintiff is proceeding *in forma pauperis*, service in this case is governed by Federal Rule of Civil Procedure 4(c)(3) and 28 U.S.C § 1915(d), which "[t]ogether, … stand for the proposition that[,] when a plaintiff is proceeding in forma pauperis[,] the court is obligated to issue plaintiff's process to a United States Marshal who must in turn effectuate service upon the defendants, thereby relieving a plaintiff of the burden to serve process once reasonable steps have been taken to identify for the court the defendants named in the complaint." *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996).[1]

While the United States Marshals Service has attempted service on all remaining Defendants at the addresses provided by Plaintiff on the USM 285 forms, only Defendants Celli and Steinmetz

---

[1] At the time *Byrd* was decided, the operative Rule was Rule 4(c)(2) and the operative statute was 28 U.S.C. § 1915(c). Both Rule 4 and 28 U.S.C. § 1915 were subsequently amended. While the language remained the same as that interpreted by *Byrd*, Rule 4(c)(2) became Rule 4(c)(3), and § 1915(c) became § 1915(d).

have been served. (Doc. Nos. 20 & 24). Though service for Defendant Ragland was initially accepted at the Marion Correctional Institution, (Doc. No. 20 at 5-6), the ODRC later filed a letter returning service because Ragland was "no longer employed by the Marion Correctional Institution." (Doc. No. 24). Similarly, the ODRC issued a letter returning service on Defendant Williams because he "is no longer employed by ODRC." (Doc. No. 21 at 2).

After the ODRC retuned service on Williams, but before it returned service on Ragland, Plaintiff filed a request that I order the United States Marshals Service to locate Williams so that he may be served. (Doc. No. 23). In support, Plaintiff alleges that he attempted to assist in locating Williams by directing service on the ODRC and stating on the USM 285 form, "Formerly employed by the Ohio Department of Rehabilitation and Correction. Now retired. Worked at Marion Correctional Institution." (Doc. No. 21 at 1). Additionally, Plaintiff asserts the relief requested is necessary because he is a prisoner and "[d]ue to security concerns, [he] is not permitted to know the addresses or telephone number of any ODRC employee, much less one that is retired." (Doc. No. 23 at 3).

The Seventh Circuit has recognized the following "two concerns that pervade prisoner litigation" in relation to service:

> 1) the security risks inherent in providing the addresses of prison employees to prisoners; and 2) the reality that prisoners often get the "runaround" when they attempt to obtain information through governmental channels and needless attendant delays in litigating a case result.

*Graham v. Satkoski*, 51 F. 3d 710, 713 (7th Cir. 1995). Still, an *in forma* pauperis prisoner plaintiff "'may not remain silent and do nothing to effectuate service. At a minimum, a plaintiff should request service upon the appropriate defendant and attempt to remedy any apparent service defects of which a plaintiff has knowledge.'" *VanDiver v. Martin*, 304 F. Supp. 2d 934, 943 (E.D. Mich. 2004) (quoting *Rochon v. Dawson*, 828 F.2d 1107, 1110 (5th Cir. 1987)).

Here, Plaintiff has not remained silent as to service on Williams. Instead, he attempted to aid in the process from the start by providing additional information on the USM 285 form. (Doc. No. 21 at 1). He has also filed requests seeking judicial intervention to aid in this process. (Doc. Nos. 23 & 27).

While I will not order the United States Marshals Service to independently locate Ragland and Williams at this time, I will order the ODRC to file under seal the last known addresses for each of these Defendants. *See, e.g., Allen v. Siddiqui*, No. 3:07CV-P261-H, 2008 WL 2217363, at * 2 (W. D. Ky. May 27, 2008) ("[T]o lessen the burden on the United States Marshals Service, as a matter of practice, this Court has in the past attempted secure that information by having the agency that previously employed the defendant to file his last known address under seal."). The ODRC shall file this document within twenty-one (21) days of this Order. After that time, I will direct the United States Marshals Service to attempt service.

**E. Request for Intervention**

Plaintiff's "request for intervention" relates to certain actions by law library staff and enforcement of Ohio Department of Rehabilitation & Correction ("ODRC") policies related to inmate use of law library computers. To the extent that Plaintiff seeks to assert new causes of action against new Defendants based on conduct unrelated to that at issue in his remaining claims, I deny leave to amend the Complaint to add those causes of action. Should Plaintiff seek to state these as claims, a new action against these new Defendants must be filed.

Related to the existing claims in this action is Plaintiff's allegation that his work product related to this case were deleted from the law library computers after a certain number of days pursuant to ODRC policy on information technology retention. Plaintiff contends these policies were not properly posted in the law library and, therefore, he had no knowledge of the policies and did not timely print his materials before they were deleted from the computers. Therefore, he

requests that I order ODRC staff to recover these legal document, "using forensic computer science if necessary." (Doc. No. 17 at 13).

While I appreciate Plaintiff's frustration, this request is denied. Plaintiff does not allege that evidence in support of his remaining claims has been deleted, but instead his work product and legal research. Therefore, I find the appropriate remedy here to be granting Plaintiff additional time to perform any necessary legal research on his remaining claims.

This brings me to Plaintiff's second request related to his remaining claims in this action: for a court-ordered deadline so that he may obtain a library pass in accordance with current prison policy. Because this litigation is informally stayed so that service on the remaining Defendants may be perfected, I decline to set any further deadlines at this time. But I will remain mindful of the need for both specific deadlines and additional time for legal research and document drafting as this litigation progresses.

### III. CONCLUSION

For the foregoing reasons, I order the following:

1.) Plaintiff's motion for the Clerk of Court to obtain a valid control number is granted. (Doc. No. 7). The Clerk shall send this and all future mailings from the Court to Plaintiff on this case with a valid control number.

2.) Plaintiff's "request for intervention" is granted in part and denied in part. (Doc. No. 17). While I do not grant the specific relief requested, I remain mindful of Plaintiff's concerns raised in this request moving forward in this litigation and will set deadlines accordingly.

3.) Plaintiff's requests for service are granted in part and denied in part. (Doc. Nos. 23 and 27). Within twenty-one (21) days of this Order, the ODRC shall file under seal a document containing the last known addresses of Defendants Williams and Ragland.

4.) Plaintiff's motion for appointment of counsel is denied. (Doc. No. 3); and

5.) Plaintiff's request for an extension of time to determine a response to my March 21, 2023 Memorandum Opinion and Order is denied. (Doc. No. 19).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge