UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Anthony S. Leach, | Case No. 3:22-cv-528 |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| Mike DeWine, et al., | |
| Defendants. | |

## I. INTRODUCTION

Pending before me are several motions filed by *pro se* Plaintiff Anthony S. Leach and remaining Defendants Martino Celli, Akil Ragland, Caleb Steinmetz, and Richard Williams. I will resolve each in this Memorandum Opinion and Order.

## II. BACKGROUND

Leach is an Ohio prisoner currently incarcerated at Marion Correctional Institution ("MCI"). Through this action, Leach initially asserted 40 claims against 25 Defendants including corrections officers, medical staff, the warden, the former warden, deputy wardens, institutional inspectors, administrators, and the Governor of Ohio. (Doc. No. 5). Because he is proceeding *in forma pauperis* and is seeking redress from a governmental employee, his Amended Complaint was screened under 28 U.S.C. §§ 1915(e)(2) and 1915A. (Doc. No. 12). I determined the following claims survived this initial screening:

> (1) Plaintiff's Eighth Amendment claim of deliberate indifference against Defendant Ragland for Plaintiff's conditions of confinement while on suicide watch; (2) Plaintiff's Eighth Amendment claims of excessive force and denial of medical treatment following the use of force against Defendants Williams, Celli, and

Steinmetz; and (3) Plaintiff's claims of intentional infliction of emotional distress [("IIED")] against Ragland, Williams, Celli, and Steinmetz.

(*Id.* at 23-24).

The surviving claims relate to events that allegedly occurred while Leach was sick with COVID-19 and under suicide watch. Specifically, I concluded the following facts alleged gave rise to both Leach's § 1983 claim and IIED claim against Ragland:

> Plaintiff claims that the conditions of his cell while on suicide watch violated his Eighth Amendment rights. In support, he argues that Ragland forced him to remain naked in a dirty cell with no heat and a window that would not close, thus exposing him to freezing temperatures. (Doc. No. 5 at 38). According to Plaintiff, he was sick and fevered and "nearly froze to death," from the evening of April 8 through the morning of April 9. And during his morning shower, he became too dizzy and weak to stand and he required medical attention. (*Id.* at 21-22).
> He also alleges that Ragland removed one of Plaintiff's CPAP cords and consequently refused to allow Plaintiff to sleep with his machine. (*Id.* at 36). Plaintiff states that when he advised Ragland that he needed the cord to plug in the CPAP, Ragland replied that he did not care. And when Plaintiff informed Ragland that he had no authority to take a medical device from him and that only medical personnel had that authority, Ragland replied, "Watch me." Plaintiff later requested the corrections officer on watch to retrieve his cord, and the officer advised Plaintiff that "Ragland was not going to give the cord back." (*Id.* at 19-20).

(Doc. No. 12 at 13-14). And, I concluded the following facts alleged gave rise to Leach's § 1983 claim and IIED claim against Defendants Williams, Celli, and Steinmetz:

> Concerning his excessive force claim, Plaintiff states that he was too weak and ill to stand up and he begged for help. He alleges that Lieutenant Richard A. Williams angrily stated that he "was tired of all this shit" and ordered corrections officers Martino F. Celli and Caleb Steinmetz to physically remove Plaintiff from the floor, authorizing Celli and Steinmetz "to use direct force to get [Plaintiff] back to his cell." (Doc. No. 5 at 26).
> According to Plaintiff, at Williams's command, Celli and Steinmetz rolled Plaintiff on his stomach, lifted Plaintiff's hands behind his back, and secured Plaintiff's hands in handcuffs. Plaintiff states that Celli and Steinmetz used a force technique designed to force compliance from recalcitrant inmates by locking Plaintiff's arms in an "arm bar," causing severe pain, and they carried him through the halls. (*Id.*). Plaintiff states that he was weakened by the Covid-19 virus and unable to comply with the defendants' orders, and therefore, he "was forced to take the full brunt of the torture for several minutes as Celli and Steinmetz struggled through the narrow … passages of the segregation block." (*Id.* at 27). Plaintiff alleges that Celli and Steinmetz inflicted more pain on him for a longer period of time by taking a route that was 3 times the length of the direct path to his cell.

> According to Plaintiff, although he informed the defendants that they were hurting him, Steinmetz replied that he did not care, and when they arrived at his cell, the defendants "bounced" him in an effort to "do more damage to his shoulders." Plaintiff alleges that he experienced "blinding pain from the torture," and after the defendants "dumped" Plaintiff on his bed, he passed out. (*Id.*). Plaintiff indicates that he still suffers from the injuries he sustained during the incident.
>
> Finally, Plaintiff alleges that the defendants refused to provide Plaintiff with medical attention after the use of force. (*Id.* at 27-28, 41). Plaintiff states that Celli and Steinmetz went to the medical department to receive their own treatment for any injuries following the incident and they reported no injuries from their interaction with the plaintiff. Celli and Steinmetz, however, did not present Plaintiff for medical examination, as required by law. (*Id.*).

(Doc. No. 12 at 15-16).

### III. ANALYSIS

#### A. WILLIAMS'S MOTION FOR LEAVE TO FILE AN ANSWER *INSTANTER*

On September 28, 2023, Williams moved for leave to file an Answer *instanter* and attached his proposed Answer to his motion. (Doc. No. 39; Doc. No. 39-1). Acknowledging that his proposed Answer would be filed 20 days late, Williams seeks relief under Federal Rule of Civil Procedure 6(b)(1)(B), which allows for an extension of time "because of excusable neglect."

Courts balance five factors to determine whether excusable neglect justifies a late filing: "(1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith." *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

Leach filed an eighty-nine-page "Response" to Williams's proposed Answer, responding to each paragraph of that Answer.[1] (Doc. No. 46). But Leach's Response contains no opposition to

---

[1] A reply to an answer is only permitted "if the court orders one." Fed. R. Civ. P. 7(a)(7). I did not order Leach to file such a reply nor do I find such an order warranted or appropriate. Therefore, this is not an operative pleading in this case and will be considered only to the extent that it responds to the motion for leave to file the Answer.

Williams's motion for *leave to file* the proposed Answer. Notably, he does not allege he will suffer any prejudice if the late filing is accepted. He also does not challenge Williams's assertion that the 20-day delay will have little, if any, impact these proceedings and does not contend this short delay was unreasonable. Because Leach states no meaningful objection to Williams filing the belated Answer, I consider the motion unopposed. *See, e.g., Equal Emp. Opportunity Comm'n v. Indi's Fast Food Rest., Inc.*, No. 3:15-cv-590, 2017 WL 1658934, at * 5 (W.D. Ky. May 1, 2017) (inferring from plaintiff's conduct that plaintiff did not oppose the motion for an extension).

Beyond this, I also conclude the 20-day delay had little impact on this litigation and accepting this late filing will not prejudice Leach. As for the reasonableness of the delay and Williams's culpability for it, I am less persuaded.

Williams's counsel represents in the motion that the combined effect of an attorney going on leave and the statutorily-required process for Williams to receive representation from the Office of the Ohio Attorney General caused the delay. (*See* Doc. No. 39 at 3). These circumstances were within the control of the Office of the Ohio Attorney General, who was aware of this litigation and Williams's status as a Defendant well before Williams's Answer was due, as evidenced by its representation of the other three remaining Defendants in this case. Further, counsel had previously been granted leave to file a belated Answer for Defendants Celli and Steinmetz. (Doc. No. 25).

I find it troubling that the Office of the Ohio Attorney General would leave Williams at risk of default judgment by failing to timely file an Answer for him or inform him of his representation status in sufficient time for him to timely file an Answer himself. But I will not penalize Williams for the Ohio Attorney General's conduct and do not find that conduct rises to a level of "bad faith." Therefore, I conclude "excusable neglect" caused the delay and grant Williams leave to file an Answer *instanter*. Fed. R. Civ. P. 6(b)(1)(B). To avoid further delay, I direct the Clerk to file Williams's proposed Answer attached as an Exhibit to his motion as his Answer. (Doc. No. 39-1).

Related to this matter are Leach's pending motions for sanctions and for leave to compel joinder based on affirmative defenses raised in Williams's Proposed and now operative Answer. (Doc. Nos. 47 & 48).

Leach's motion for sanctions is based on his belief that he must respond to each affirmative defense. That is not the case. In fact, Rule 7 provides that a reply to an Answer is only "allowed . . . if the court orders one." Fed. R. Civ. P. 7(a)(7). I have issued no such Order and conclude no reply to Williams's Answer is necessary here. Accordingly, because Leach may not file a response to Williams's Answer, I deny as moot his motion for sanctions. To be clear, only if Defendants move for judgment based on an affirmative defense asserted in an Answer will Leach be required to respond to that affirmative defense.

Leach's motion for joinder stems from the following affirmative defenses:

14. Defendants are entitled to an apportionment of liability, including that of non-parties as relevant.

17. Plaintiff's claims must be dismissed pursuant to Fed. R. Civ. P. 19 for failure to name an indispensable party without whom complete relief is not possible.

(Doc. No. 39-1 at 2-3). Leach contends these defenses suggest Defendants know of other individuals who have not yet been identified but must be joined in this action. (Doc. No. 48). As such, he asks that I order Defendants' counsel to identify any individual they believe to be an indispensable party. Given the circumstances, I find this to be a fair request. By October 31, 2024, Defendants' counsel shall file a Notice either identifying any non-party they believe to be "indispensable" or waiving this defense. Should they identify any indispensable non-party, Defendant shall also file under seal the last known address for each so that they may be promptly served. (*See* Doc. No. 28 at 6).

5

In sum, based on the discussion in this section, I grant Williams's motion to file this Answer *instanter*, (Doc. No. 39), deny Leach's motion for sanctions, (Doc. No. 47), and grant Leach's motion for joinder to the limited extent described above. (Doc. No. 48).

### B.  DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants seek judgment on the pleadings of Leach's § 1983 Eighth Amendment claims against Williams, Celli, and Steinmetz, as well as his intentional infliction of emotional distress claims against all remaining Defendants. (Doc. No. 42).

The same pleading requirements apply to a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and a motion for judgment under the pleadings pursuant to Rule 12(c). *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). The pleadings must demonstrate sufficient factual matter, if taken as true, which state a claim "plausible on its face." *Bell Atl. Corp. v. Twombly* 550 U.S. 544, 470 (2007). "A plaintiff falls short if [they] plead[] facts 'merely consistent with a defendant's liability' or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct. . . .'" *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).

On a motion for judgment on the pleadings, all well-pleaded allegations of the non-moving party must be taken as true. *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008). Judgment should be granted only where there is no material issue of fact involved and the moving party is entitled to judgment as a matter of law. *Paskavan v. City of Cleveland Civ. Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).

In support of their motion, Defendants allege each of the claims of which they seek judgment is time-barred. (Doc. No. 42 at 9-12).

At the outset, I address Defendants' timeliness argument related to portions of the Amended Complaint describing events as occurring on "April 9, **2019**" and "April 10, **2019**." (*Id.* at 4-6, 8-9)

6

(emphasis in original). In response to Defendants' motion, Leach asserts that, when read in context, his Amended Complaint actually alleges April 9, **2020** and April 10, **2020** as the dates on which the events in question occurred. (Doc. No. 44 at 7-15) (emphasis added). He has also moved for leave to file a Second Amended Complaint to correct this "clerical error." (Doc. No. 50).

When read in the context of the operative Amended Complaint and with basic knowledge of recent history, it is clear that Leach intended to state these events occurred while he was sick with COVID-19 on these days in April 2020, not 2019. Construing the Amended Complaint to excuse this obvious clerical error comports with the liberal construction afforded to *pro se* pleadings. *See Garrett v. Belmont Cnty. Sheriff's Dep't*, 374 F. App'x 612, 614 (6th Cir. 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) ("*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be construed liberally."); *see, e.g., White v. Kasich*, No. 2:12-cv-1125, 2013 WL 941440, at *7 (S.D. Ohio Mar. 8, 2013).

Further, requiring Leach to file a Second Amended Complaint only to correct this clerical error would result in unnecessary delay associated with Defendants' required responses to any Second Amended Complaint. Accordingly, in the interest of efficiency, I will consider the events described in paragraphs 152-174, 182, and 183 of the Amended Complaint to have occurred on April 9, 2020 and April 10, 2020, (Doc. No. 5 at 21-26), and deny as moot Leach's motion for leave to file a Second Amended Complaint. (Doc. No. 50).

With this issue resolved, I turn to the merits of Defendants' motion for judgment on the pleadings. (Doc. No. 42).

Defendants' motion for judgment on the pleadings of Leach's § 1983 claims relies exclusively on the clerical error. That is, they argued that because the events described occurred on April 9, 2019 and April 10, 2019, the § 1983 claims based on these events and filed on March 31, 2022 were barred by the two-year statute of limitations for § 1983 claims in Ohio. *See Browning v.*

7

*Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (citing O.R.C. § 2305.10). But, as explained above, I now construe the Amended Complaint to have stated these events occurred on April 9, 2020 and April 10, 2020. As such, the § 1983 claims were timely asserted, and Defendants' motion for judgment on the pleadings of these claims is denied.

Remaining is the question of whether Leach's Ohio IIED claims were timely asserted. The answer to this question depends on what statute of limitations applies to these claims. The Sixth Circuit recently encountered a similar question and explained the applicable law as follows:

> Generally, Ohio IIED claims are subject to a four-year statute of limitations. *Yeager v. Loc. Union 20*, 6 Ohio St.3d 369, 453 N.E.2d 666, 672 (Ohio 1983), *abrogated on other grounds by Welling v. Weinfeld*, 113 Ohio St.3d 464, 866 N.E.2d 1051 (Ohio 2007). However, the Ohio Supreme Court has said that "[w]here the essential character of an alleged tort is an intentional, offensive touching, the statute of limitations for assault and battery governs even if the touching is pled as" another action, such as IIED. *Doe v. First United Methodist Church*, 68 Ohio St.3d 531, 629 N.E.2d 402, 407 (Ohio 1994), *abrogated on other grounds by statute, as recognized by Pratte v. Stewart*, 125 Ohio St.3d 473, 929 N.E.2d 415, 419, 425 (Ohio 2010) (alteration in original) (citation omitted).

*Saalim v. Walmart, Inc.*, 97 F.4th 995, 1013 (6th Cir. 2024).

Like the defendants in *Saalim*, Defendants here argue the one-year assault and battery statute of limitations applies to Leach's IIED claims because the facts alleged in support of those claims give rise to claims of assault and battery. (Doc. No. 42 at 10-11).

In response, Leach quotes *Deir v. Lake County*, No. 1:12CV110, 2014 WL 494570 (N.D. Ohio Feb. 6, 2014), implicitly acknowledging that "'Ohio law provides that while the statute of limitations for a claim of intentional infliction of emotional distress is four years, when the acts giving rise to the underlying intentional infliction claim would support another tort, it is the statute of limitations for the other tort that controls the claim for intentional infliction of emotional distress.'" (Doc. No. 44 at 15 (quoting *Deir*, 2014 WL 494570, at *3)). Presumably based on this standard, he suggests that because the same facts give rise to his IIED claims as those supporting his

8

tort claims under § 1983, the statute of limitations applied to § 1983 claims controls the IIED claims. He admits "[t]he statute of limitations is difficult to understand." (*Id.* at 23).

Leach's confusion on the issue is understandable. That is, he is correct that the same facts support both the IIED and § 1983 claim against each respective Defendant. But his understanding of the law is incorrect.

Contrary to Leach's suggestion, the "other tort" whose statute of limitations controls the IIED claim cannot be the federal § 1983 tort, which itself "borrows" Ohio's general or residual statute of limitations applicable to personal-injury actions. *See generally Browning*, 869 F.2d 989 (citing *Owens v. Okure*, 488 U.S. 235 (1989)); *Nadra v. Mbah*, 119 N.E.2d 829 (Ohio 2008). To hold as much would be in direct conflict with Ohio's well-settled requirement that "[i]n making the choice between two statutes of limitations applicable to the same conduct, … [a] special statutory provision which relates to the specific subject matter involved in litigation is controlling over a general statutory provision which might otherwise be applicable.'" *Love v. City of Port Clinton*, 524 N.E.2d 166, 167-68 (Ohio 1988) (quoting *Andrianos v. Community Traction Co.*, 97 N.E.2d 549, 550 syl. at ¶ 1 (Ohio 1951)).

Instead, the "other tort" is the specific Ohio tort that "shares the same essential character" as the Ohio IIED claim. *Saalim*, 97 F.4th at 1014. In other words, the Ohio tort that could have been pled based on the same underlying facts. *See, e.g. Love*, 524 N.E.2d at 168. Here, Defendants allege assault and battery is the "other tort" whose statute of limitations must apply to Leach's IIED claims.

First, Defendants correctly state Leach's IIED claim against Williams, Celli, and Steinmetz related to excessive force is based on Leach's assertions that these Defendants used physical force

9

against Leach without provocation on the evening of April 9, 2020.[2] (Doc. No. 42 at 10-11; *see also* Doc. No. 12 at 15-16 (citing Doc. No. 5 at 26-27)). I agree that the "true nature or subject matter of the[se] acts" is that of "intentional, offensive touching" and the threat thereof give rise to claims of assault and battery. *First Methodist*, 629 N.E.2d at 407; *see also Krewina v. United Specialty Ins. Co.*, 221 N.E.3d 819, 823-24 (Ohio 2023) ("Numerous courts have defined 'assault' under Ohio civil and common law as the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact.") (further citation and internal quotation marks omitted). Therefore, Leach's IIED claim involving excessive force shares the "essential character" of an assault and battery claim, and a one-year statute of limitations applies. *See Saalim*, 97 F.4th at 1013-14; *see also* O.R.C. § 2305.111. Because Leach did not bring this claim until March 31, 2022, more than one-year after it accrued in April 2020, it is time-barred.

Second, as Defendants assert, Leach's IIED claim regarding conditions of confinement against Ragland is predicated on placing Leach in the unsanitary cell in April 2020. (Doc. No. 42 at 11; *see also* Doc. No. 12 at 13-14 (citing Doc. No. 5 at 19-22, 36, 38)). Under Ohio law, physically forcing a person into contact with toxic or unsanitary substances constitutes intentional, offensive touching. *See Brown v. Holiday Inn Express & Suites*, 118 N.E.2d 1021, 1025 (Ohio Ct. App. 2018) (applying the statute of limitations for battery to a claim that a hotel employee intentionally left a soiled towel for the plaintiff to use). Therefore, Leach's allegations regarding his conditions of confinement in the suicide watch cell are, in essence, a claim for battery, and a one-year statute of limitations applies. Accordingly, Leach's IIED claim against Ragland based on this set of facts is also untimely.

---

[2] In their motion, Defendant cite the "April 9, 2019" date for these events as was stated in the Amended Complaint. In the interest of efficiency, I will consider Defendants' substantive argument in the context of the corrected date of "April 9, 2020."

10

Concluding Leach's IIED claims against Williams, Celli, and Steinmetz related to excessive force and against Ragland in regard to conditions of confinement are untimely, I grant Defendants judgment on the pleadings of these claims. Defendants do not address the deliberate indifference aspect remaining of each of these IIED claims. While it may not have been clear from my March 21, 2023 Memorandum Opinion and Order, I consider these allegations to be a facet of the IIED claims just as they are a facet of the § 1983 claims. Accordingly, because Defendants have not moved for judgment on this portion of the IIED claims, they remain undisturbed.

Like the section above, I clarify here my rulings through this section. That is, Defendants' motion for judgment on the pleadings in granted as to the IIED claims related to excessive force and conditions of confinement and denied as to all other claims, (Doc. No. 42), and Leach's motion for leave to file a Second Amended Complaint is denied as moot. (Doc. No. 50).

### C. LEACH'S MOTION FOR RECONSIDERATION

In his seventy-eight-page Motion for Reconsideration, Leach asks me to reconsider nearly every adverse ruling made in this case.[3] (*See* Doc. No. 37).

As I explained in my July 5, 2023 Memorandum Opinion and Order when considering Leach's purported motion for an extension of time, which was "itself a motion for reconsideration, citing facts and law,"

> "The major grounds justifying reconsideration of interlocutory orders are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998) (*citing Petition of U.S. Steel Corp.*, 479 F.2d 489 (6th Cir. 1973), *cert. denied, Fuhrman v. U.S. Steel Corp.*, 414 U.S. 859 (1973)); *see also Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) (*citing Marconi Wireless Tel. Co. of Am. v. United States*, 320 U.S. 1, 47-48 (1943) ("District courts have inherent power to

---

[3] Memoranda in support of motions must adhere to the length limitations in Local Rule 7.1(f). While I had not yet assigned this case to a particular track when the motion was filed, Leach's motion is much longer than even the most generous page limit the Local Rule allows. *See* Local Rule 7.1(f). I remind him that a party who wishes to file a brief in excess of the page limit must obtain "prior approval of the Judicial Officer for good cause shown." *Id.*

reconsider interlocutory orders and reopen any part of a case before entry of a final judgment.")).

(Doc. No. 28 at 3).

With the exception of his "Request for Intervention," Leach identifies no "intervening change of controlling law," points to no "new evidence," and identifies no "need to correct a clear error or prevent manifest injustice" to support reconsideration of any of the adverse rulings of which he seeks reconsideration. *Reich*, 990 F. Supp. at 965. Therefore, I will devote no further discussion to any of my previous rulings other than the "Request for Intervention."

In my July 5, 2023 Memorandum Opinion and Order, I denied Leach's "Request for Intervention" asking that I "order ODRC staff to recover [certain] legal documents 'using forensic computer science if necessary.'" (Doc. No. 28 at 7 (quoting Doc. No. 17 at 13)). Instead, I granted an alternate remedy because "Plaintiff does not allege that evidence in support of his remaining claims has been deleted, but instead his work product and legal research." (Doc. No. 28 at 7). Now, Leach supports his motion to reconsider the "Request for Intervention" with "new evidence" that, in addition to his work product and legal research, "all informal complaints, grievances and Appeals to the Chief Inspector's Office pertaining to the issues the Plaintiff raised in his Amended Complaint" were also deleted. (Doc. No. 37 at 75).

I agree that these documents would be evidence of his claims. But still, I find the appropriate remedy for any erroneous deletion is not a forensic examination of the law library computers because "all informal complaints, grievances and Appeals to the Chief Inspector's Office pertaining to" Leach's remaining claims should be produced through discovery. During that phase of the case, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Accordingly, I find the standard mechanisms of the discovery process to be the appropriate remedy for Leach to access the allegedly deleted information he describes.

12

For these reasons, I deny Leach's motion for reconsideration. (Doc. No. 37).

**D.     LEACH'S REQUEST FOR LEGAL MATERIALS AND MOTION FOR EXTENSION OF TIME**

Related to Leach's motion for reconsideration is his request for me to "loan the Plaintiff a copy of the latest edition of 'Anderson's Sixth Circuit Federal Practice Manual,' or its equivalent, and any and all *pro se* guides available, and grant the Plaintiff an extension of time to review said books and documents, to wit: long enough for the Plaintiff to review said material and to file an interlocutory appeal of some of this court's decisions in its March 21, 2023 Memorandum Opinion and Order and July 5, 2023 Memorandum Opinion and Order." (Doc. No. 43 at 1). But Leach makes no attempt to show the court of appeals would have jurisdiction over such an interlocutory appeal.

Federal courts of appeals have jurisdiction to hear appeals of "final judgments of district courts." *Summers v. Leis*, 368 F.3d 881, 886 (6th Cir. 2004) (citing 28 U.S.C. § 1291). A final judgment for purposes of § 1291 "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Page Plus of Atlanta, Inc. v. Owl Wireless, LLC*, 733 F.3d at 658, 659 (6th Cir. 2013) (quoting *Catlin v. U.S.*, 324 U.S. 229, 233 (1945) (internal quotation marks omitted). This finality requirement generally "establishes a one-case, one-appeal rule." *Id.* Still, under 28 U.S.C. § 1292, federal courts of appeals are granted jurisdiction to hear appeals of certain interlocutory orders. *See* 28 U.S.C. § 1292(a)-(b).

Here, Leach implicitly concedes that neither my March 21, 2023 Memorandum Opinion and Order nor my July 5, 2023 Memorandum Opinion and Order qualifies on its own as a final judgment under 28 U.S.C. § 1291. (*See* Doc. No. 43 at 1). But Leach appears to presume he may take an interlocutory appeal of both. Leach does not specify whether he believes the Orders he wishes to appeal fall under 28 U.S.C. § 1292(a), which are appeals of right, or 28 U.S.C. § 1292(b),

13

which require the written permission of a district court judge. As such, I will consider whether either applies.

Briefly by way of background, the March 21, 2023 Order dismissed some of Leach's claims but allowed him to proceed on others, (Doc. No. 12), and the July 5, 2023 Memorandum Opinion and Order addressed miscellaneous requests and motions by Leach, including his first motion to reconsider my March 21, 2023 Memorandum Opinion and Order. (Doc. No. 28).

These Orders are not the kind contemplated in § 1292(a) because they did not grant, continue, modify, refuse to modify, dissolve, refuse to dissolve, or refuse any injunction; did not involve a receiver; and do not relate to any admiralty case. *See* 28 U.S.C. § 1292(a). They also do not involve any other kind of order that is immediately appealable of right, such as an order denying a claim of qualified immunity. *See, e.g., Summers*, 368 F.3d at 886. Therefore, my March 21, 2023 and July 5, 2023 Orders would only be immediately appealable if they satisfy the requirements of 28 U.S.C. § 1292(b).

To satisfy these requirements, I must conclude that either Order "involves a controlling question of law as to which there is substantial ground for difference of opinion" or that an immediate appeal from either "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). I conclude neither here. That is, neither Order in question "involves a controlling question of law as to which there is substantial ground for difference of opinion." *Id*. Further, an immediate appeal of either would not "materially advance the ultimate termination of the litigation." *Id*. Therefore, I decline to certify either Order for interlocutory appeal.

I reach the same conclusion if I instead construe Leach's motion to be one under Federal Rule of Procedure 54(b), which allows a court to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties," but "only if the court expressly determines that there is no just

reason for delay." Fed. R. Civ. P. 54(b). That is not the case here. As such, I cannot enter final judgment for the claims I dismissed in the March 21, 2023 Memorandum Opinion and Order.

Because Leach cannot appeal either Order without my certification, and because I decline to certify either Order, I deny his request for an extension of time to file an interlocutory appeal as moot. (Doc. No. 43). And, because Leach predicates his request for me to loan him legal materials on being granted an extension of time to file an interlocutory appeal, that motion is moot as well.

### E.   REMAINING MOTIONS

First, I deny as moot Defendants' motion to stay its response deadline to Leach's motions I have resolved above, (Doc. No. 51), and Leach's motion to strike this motion by Defendants. (Doc. No. 52).

Second, I deny as moot Leach's motion for permission to appear for pretrial hearings and conferences telephonically or via video. (Doc. No. 41). No hearings or conferences are currently scheduled in this case. Should I schedule any conferences or hearings in this action, I will be mindful of the circumstances.

Third, I grant in part and deny in part Leach's motion that I order the Clerk of Court to provide him with examples of certain discovery materials. (Doc. No. 53). Providing these materials would be to give legal advice, something which the Court, including its Clerk, may not do. Within this motion, I note Leach's request for a copy of docket. This may be provided to Leach, and I ask that the Clerk do so.

### IV.   CONCLUSION

For the reasons stated above, the pending motions are decided, as follows:

1.) Leach's motion for reconsideration is denied, (Doc. No. 37);

2.) Williams's motion to file his Answer *instanter* is granted, (Doc. No. 39);

3.) Leach's motion to appear telephonically or via video conference is denied as moot, (Doc. No. 41);

4.) Defendants' motion for judgment on the pleadings in granted as to the IIED claims related to excessive force and conditions of confinement and denied as to all other claims, (Doc. No. 42);

5.) Leach's request for loans and motion for an extension of time to file an interlocutory appeal is denied, (Doc. No. 43);

6.) Leach's motion for sanctions is denied, (Doc. No. 47);

7.) Leach's motion for joinder is granted to the limited extent described above, (Doc. No. 48);

8.) Leach's motion for leave to file a Second Amended Complaint is denied as moot, (Doc. No. 50);

9.) Defendants' motion to stay their response deadline to Leach's motion resolved here is denied as moot, (Doc. No. 51);

10.) Leach's motion to strike Defendants' motion for an extension is denied as moot, (Doc. No. 52); and

11.) Leach's motion for examples is denied. (Doc. No. 53).

With this, I remind Defendants' counsel of the obligation to file a Notice by October 31, 2024, which either identifies any non-party they believe to be "indispensable" or waives this defense. Should any indispensable non-party be identified, Defendants' counsel shall also file under seal the last known address for each so that they may be promptly served. (*See* Doc. No. 28 at 6).

Finally, I direct the Clerk to file on the public docket Williams's proposed Answer, (Doc. No. 39-1), and ask that a copy of the public docket be included in the mailing sent to Leach with this Order.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

16